UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JAMES LANGFORD,

        Plaintiff,        Case No. 2:16-cv-11

v.        Honorable Gordon J. Quist

UNKNOWN KOSKELA,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

### Factual Allegations

Plaintiff James Langford, a prisoner currently incarcerated at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Unknown Koskela and Chaplain David Rink. Plaintiff alleges that

he is a Muslim. Plaintiff states that on June 28, 2015, at approximately 5:40 pm, Defendant Koskela asked him to provide a urine sample for drug testing. Plaintiff stated that he was unable to provide a sample because he had been fasting all day as part of his observance of Ramadan. Plaintiff stated that he would be able to provide a urine sample after he broke his fast following sunset. Defendant Koskela told Plaintiff that if he failed to provide a sample, he would write Plaintiff a class I misconduct ticket for substance abuse.

Plaintiff subsequently spoke to Sergeant Davidson, who told Plaintiff that he had until one hour after his evening meal in which to provide a urine sample. Plaintiff thanked Sergeant Davidson and returned to the quiet room in his housing unit. While Plaintiff was on his way from the quiet room to his cell, he stopped in the restroom to see if he could urinate, but due to his dehydration, he was only able to produce a drop of urine. Plaintiff concluded that the amount was insufficient for a test. Plaintiff then flushed the toilet. At this point, Officer Goings arrived and stated, "I thought that's where you had gone." Plaintiff responded by stating, "what?" Officer Goings then contacted the institutional school building and relayed that Plaintiff had attempted to use the restroom.

Plaintiff received his evening meal at 9:00 pm and offered to provide a urine sample to Officer Russo at 9:30 pm. Officer Russo relayed the information to Defendant Koskela, who indicated that Plaintiff could wait until he was ready to collect the sample. Plaintiff finally provided a urine sample to Defendant Koskela at approximately 10:30 pm. Defendant Koskela informed Plaintiff that he was writing two misconducts on him for refusing to provide a urine sample earlier in the day.

On June 19, 2015, Plaintiff received a misconduct ticket for substance abuse based on Plaintiff's failure to provide a urine sample or to drink water in violation of his religious fast. In the misconduct ticket, Defendant Koskela describes the violation as follows:

> On 6/18/15 at 1740, I told inmate Langford #351520 to produce a urine sample for a drug test. Langford stated to me, "I refuse. I can't piss. I'm on Ramadan and I can't drink water until tonight per my religion. I haven't drank anything all day and I can't piss until I can drink something. I will come back tonight and give you a sample." Langford then left the school building and returned to his unit. The following day, I reviewed the camera footage of the A-Wing bathroom of Neebish Unit from 6/18/15 and observed Inmate Langford walk up to and use the urinal at 1748, 8 minutes after he told me he could not produce a urine sample. Inmate Langford intentionally gave me false information about not being able to urinate due to his religious beliefs in an attempt to circumvent his one hour time limit and he did not produce a urine sample for testing as instructed.

*See* PageID.16.

On June 22, 2015, Defendant Koskela admitted that he knowingly ordered Plaintiff to violate his fast by drinking water from the drinking fountain as part of the investigation relating to the June 19, 2015, misconduct ticket. In addition, Defendant Rink inappropriately interpreted the intent of Allah by stating that "the mere abstinence from food, drink and passion is not the real meaning of fasting that God enjoined on the righteous." Defendant Rink further stated, "God doesn't accept the fasting of those who do not restrain themselves from telling falsehood or from doing false deeds."

Plaintiff was found guilty of the misconduct by Hearing Officer O'Brien on July 1, 2015, and was sentenced to 30 days toplock and 30 days loss of privileges. The Misconduct Hearing Report lists the evidence as:

> The hearing is commenced by the watching of the video that is found to be confidential for the security of the facility. The video shows Langford on 6-18-15 at 1748 hres [sic] entering the bathroom and going to a urinal and urinates for about a minnute [sic] then leaves. The prisoner is infored [sic]. Unless otherwise noted all documents are one page. The prisoner is present and the misconduct report is reviewed with him along with his statement (3 pg) that he told staff that he was

> fasting for Ramadan, that he was dehydrated and could not produce a urine sample and could not drink water and they told him he could come back because of this after his evening meal, when he came back to his unit he tried to use the bathroom but produced not enough for a sample, and he did produce a sample after evening meal, and he never refused to give a urine sample he just said he could not do so because of Ramadan and willingly gave one later with authorization, [Sergeant] Davidson's statement that Langford too [sic] me he could not urinate or drink water because he was fasting so he was told he could come back later to drop but was also told that if he was caught lying he would be given a misconduct for refusing, Officer Koskela's statement, Chaplain Rink's statement (2 pg), Prisoner Eichelburger's statement that he heard the sergeant tell him to come back after Ramadan, Memo regarding the Video that is found to be confidential for the security of the facility, and Note from [Hearing Investigator].  I find that the video requested by Langford would not prove or disprove if he refused at the time this request was given and the fact that he produced later would not provide a defense for refusing earlier.  Prisoner Langford states that he did not refuse but explained he could not urinate because he had been fasting and could not drink or drop until after the evening meal due to Ramamdan [sic] and he got permission to come back later and he did drop.  When questioned about the video he said that he did urinate but not enough and did not try originally because he knew it would not be enough.  He states he had permission to drop later so oculd [sic] not have refused and he claims he never lied.  Prisoner had nothing further to add.  No further evidence is requested or is needed.  Prisoner is informed of the findings, sanctions and sanction dates and told that he will receive the report later today.

*See* PageID.17 and PageID.18.

In Hearing Officer O'Brien's reasons for findings, he notes:

> Prisoner Langford refused to provide a urine sample for drug testing when asked to do so on 6-18-15 at 1740 hrs by saying he could not urinate as he was fasting from Ramadan and was dehydrated and would not be able to drink water until after sunset when he knew at the time he could urinate by evidence of the fact that as soon as he returned to his unit he went to the bathroom and urinated on 6-18-15 at 1748 hrs.  By lying about his religion being why he could not urinate, he clearly was providing a sample at this time when at the time he clearly had to urinate.  Prisoner Langford's statement that he did [not] urinate much at the time so it would not be enough for a sample is not believed because if that was true he would have at least tried if he was not refusing to provide a sample.  Also, it is not a defense that eh was told to come back and try later because the fact that he was allowed to drop later would not authorize him to lie and refuse earlier.  The Officer is clear and factual in his statement and is found to be credible.  The charge is upheld.

*See* PageID.17.

Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that the major misconduct charges against him were "false." A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectable liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Moreover, a finding of guilt in a major misconduct proceeding has preclusive effect against claims dependent on the same issues of fact. *See Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013). Plaintiff was found guilty of the misconduct conviction following a hearing. Therefore, Plaintiff's due process claim is properly dismissed.

Plaintiff also claims that Defendants violated his First Amendment right to freely exercise his religious beliefs. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

In this case, Plaintiff's allegations, as well as the attached exhibits to his complaint, clearly show that he received the misconduct ticket because he falsely stated that he could not urinate. Plaintiff was observed urinating after asserting that he could not do so because he had been fasting. The misconduct ticket was for substance abuse. Plaintiff fails to allege any facts showing that the misconduct ticket in any way infringed upon his sincerely held religious practice or belief. He therefore has not alleged how his First Amendment right to the free exercise of religion was impaired. Second, the prison officials have a legitimate penological interest in preventing prison

inmates from using drugs and alcohol. There is a valid, rational connection between testing prisoners' urine for drugs and alcohol and preventing its use in the prison. Plaintiff was not prevented from fasting in violation of his religious beliefs. Nor did he receive the misconduct as a result of his fasting. Rather, Plaintiff received the misconduct solely because he was caught urinating after he claimed that he was unable to do so until he broke his fast. Accordingly, Plaintiff fails to state a claim for a violation of his First Amendment rights.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  March 21, 2016                                  /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE